UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hydreon Corporation, a Minnesota corporation, | Court File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| JC Brothers, Inc., a California corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

For its Complaint against JC Brothers, Inc., Plaintiff Hydreon Corporation, hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is a patent infringement, trademark counterfeiting, infringement, unfair competition and false designation of origin action, arising under the laws of the United States, including the Patent Act, 35 U.S.C. §§271 and 281-285 and the Lanham Act, 15 U.S.C §§ 1114, 1116 and 1125.

## PARTIES AND BACKGROUND

2. Plaintiff, Hydreon Corporation ("Hydreon") is a Minnesota corporation that designs, manufactures and markets various products, including patented and trademarked products sold under the brand and registered trademark FakeTV®. At all times relevant herein, Hydreon has been a duly registered Minnesota corporation with its principal place of business located in Eden Prairie, Minnesota.

3. Defendant JC Brothers, Inc. ("JCB") is a California corporation with its registered offices located at 7220 Rosemead Boulevard, Suite 202-7, San Gabriel, CA

91775-1383. According to the www.Jebsens-led.com website, Defendant JCB purports to be the owner of a retail electronics store which markets and sells products under the brand name "Jebsens." Those products include counterfeit versions of Plaintiff's FakeTV® products which infringe three U.S. patents and a registered trademark held by Plaintiff, ("Counterfeit Products").

4. On information and believe, JCB may also have been selling Counterfeit Products under other brand names and has engaged in various steps to conceal its true identity. It was not until March 2015 that Plaintiff was able to learn that the counterfeit Jebsens brand products were being offered by JCB.

5. Hydreon had previously demanded the true identities of sellers of counterfeit items from Amazon.com and eBay to determine if they are affiliated with JCB, but both companies have ignored the requests.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to the Patent Act, 35 U.S.C. §§ 271 and 281-285, the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. § 1331 (Federal question), 28 U.S.C. § 1338(a) (patent and trademark claims), 28 U.S.C. § 1338(b) (unfair competition), 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction).

7. On information and belief, Defendant has sold and continues to sell Counterfeit Products through Amazon.com and eBay.com and through other websites to customers throughout the United States, including in the State of Minnesota. Defendant's sales through Amazon.com are fulfilled by Amazon.com who is qualified and registered

to do business in Minnesota. This Court has personal jurisdiction over Defendant because Defendant sells and offers for sale Counterfeit Products in this judicial district, committed the tortious acts described herein in this judicial district, or otherwise established contacts with Minnesota sufficient to make the exercise of personal jurisdiction proper.

8. Venue is proper under 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events giving rise to the claims occurred in this district due to the nature of Defendant's nation-wide act of marketing, selling and placing Counterfeit Products into the stream of commerce throughout the United States. Discovery may also show that venue may also be proper in this district under other sections of 28 U.S.C. § 1391 and 28 U.S.C. § 1400.

## FACTUAL ALLEGATIONS

**A.     Hydreon's Patents.**

9. Hydreon is the assignee and registered owner of the following U.S. Patents:

(a)   No. 7,365,649 titled "Security Device and Methods for Security Device Operation" issued on April 29, 2008 (the "'649 Patent");

(b)   No. 7,755,470 titled "Security Television Simulator" issued on July 13, 2010 (the "'470 Patent"); and

(c)   No. 7,719,435 titled "Security Television Simulator with Realistic Emulation of Television Output" issued on May 18, 2010 (the "'435 Patent").

The '649, '470 and '435 Patents are collectively referred to as "the Patents" herein.

**B.     Hydreon's Mark.**

10.     Hydreon is also the owner of U.S. Registered Trademark No. 3519470 for the word "FakeTV."   FakeTV has been registered since October 21, 2008.

11.     Hydreon designs, manufactures, markets, advertises, distributes, and sells in interstate commerce various types of products, including but not limited to, FakeTV® products.   FakeTV® products are security/burglar deterrent devices that are designed to make it appear people are home watching television when the home is not occupied.  The products are small energy efficient devices that project and emit light patterns which simulate real television broadcasts. An example of a Hydreon FakeTV® is depicted below:



12.     FakeTV® products have and continue to enjoy significant commercial success.  Hydreon primarily sells the products on Amazon.com.

13. Beginning at least as early as 2008, Hydreon and its predecessors-in-interest adopted and began using the FakeTV trademark. Since that time, Hydreon and its predecessors-in-interest have continuously used the FakeTV trademark. FakeTV has been used in interstate commerce in the United States for the purpose of identifying Hydreon's products and for distinguishing its goods from the goods of others.

14. The registration of the FakeTV Mark on the Principal Register with the United States Patent and Trademark Office constitutes prima facie evidence of its validity and is conclusive evidence of Hydreon's exclusive rights to use the FakeTV Mark in commerce in connection with the goods named therein, and commercially related goods. 15 U.S.C. § 1057. The registration of the FakeTV Mark also constitutes constructive notice of Hydreon's ownership and exclusive rights in the FakeTV Mark, 15 U.S.C. § 1072.

15. Hydreon's products bearing the FakeTV Mark are sold throughout the United States.

16. In accordance with 15 U.S.C. § 1111, the FakeTV Mark is, and has been, displayed on Hydreon's products or on the packaging, marketing, or advertising materials, for such products, and is and was accompanied by the notation "®" to provide notice that the FakeTV Mark is federally registered.

17. Hydreon has advertised and promoted its products sold under the FakeTV Mark throughout the United States by means of various media, including, but not limited to, the Internet, and other traditional sales channels.

18. As a consequence of Hydreon's continuous use of the FakeTV Mark throughout the United States, and due to the significant investment of time, money, and efforts, widespread sales, and the high quality of Hydreon's products sold in connection with the FakeTV Mark, the FakeTV Mark has acquired value and are well-known to the consuming public and trade as identifying and distinguishing the source of Hydreon's products.

19. Hydreon has taken significant steps to protect its valuable intellectual property rights.

20. Hydreon monitors internet marketplace sites such as Amazon.com and eBay.com for suspected sellers of counterfeit FakeTV merchandise.

21. Hydreon has purchased sample Jebsens and other brands of FakeTV products from Amazon.com and analyzed to determine their authenticity and to determine that Jebsens' Counterfeit Products infringe the Patents.

22. Hydreon has expended resources to identify Defendant and other counterfeiters, who have concealed their identities with the aid and assistance of Amazon.com, eBay and others.

23. Hydreon investigates suspected manufacturers, distributors, and retailers of unauthorized counterfeit FakeTV products and then takes steps to halt such unauthorized sales, as appropriate.

**C.     Defendant's Conduct.**

24.     Defendant traffics in counterfeit FakeTVs which infringe one or more claims of each of the Patents by making, using, selling, offering to sell, and/or importing the systems and/or methods covered by one or more claims of the Patents.

25.     Defendant has also repeatedly utilized Hydreon's FakeTV Mark or confusingly similar iterations of the Mark in connection with the advertising and sale of its Counterfeit Products despite notification from Amazon.com and eBay and Hydreon that Defendant's FakeTV products infringe Hydreon's Patents and trademark.

26.     Defendant, on information and belief, without authorization or license from Hydreon, knowingly and willfully used or reproduced Hydreon's FakeTV Mark in connection with its distributing, importing, shipping, advertising, offering for sale, selling, and facilitating the sale of Counterfeit Products in commerce.

27.     In addition to infringing the Patents and the FakeTV® Mark, Defendant has gone so far as to sell a near exact replica of Hydreon's product as depicted in the table below:

| Hydreon FTV-10 Device | JCB's Jebsens Device |
|---|---|
| *front angle view* | *front angle view* |
| *back angle view* | *back angle view* |

28.     Defendant, on information and belief, made substantial sales of Counterfeit Products in the United States through Amazon.com and eBay.com's online stores and offers for sale, sells, distributes, and facilitates the sale of Counterfeit Products via eBay.com, Amazon.com, and other websites.

29.     Hydreon became aware of Defendant selling products bearing the FakeTV® Mark in 2012.

30.     Hydreon has periodically purchased sample products from Amazon.com.

31. Hydreon confirmed that the samples are Counterfeit Products.

32. Defendant purchased the Counterfeit Products from a source or sources that are not authorized or licensed by Hydreon to manufacture, offer for sale, or sell the products that infringe Hydreon's patents or bear the FakeTV Mark.

33. The Counterfeit Products are not genuine FakeTV products. Hydreon did not manufacture, inspect, or package the Counterfeit Products, prior to the unauthorized sale and did not approve the Counterfeit Products for sale or distribution.

34. Defendant is not authorized by Hydreon to manufacture, advertise, distribute, export, import, ship, sell, offer to sell, or facilitate the sale of any products bearing Hydreon's FakeTV Mark.

35. Defendant's infringement of the Patents and use of Hydreon's FakeTV Mark in connection with the advertising, marketing, distribution, import, export, shipping, offering for sale, sale, and facilitation of the sale of Counterfeit Products caused, and in the future are likely to cause, confusion among potential customers who will be deceived into believing that Defendant's Counterfeit Products are authentic products, thus harming the consuming public and irreparably harming Hydreon's valuable reputation and goodwill.

36. The aforesaid conduct is causing Hydreon irreparable harm, for which there is no adequate remedy at law.

37. Hydreon's counsel delivered a cease and desist notice to Defendant, which has been ignored. Defendant has knowingly and willfully infringed the Patents and used or reproduced Hydreon's FakeTV Mark in connection with its distributing, importing,

shipping, advertising, offering for sale, selling, and facilitating the sale of Counterfeit Products in commerce.

38. Hydreon has also demanded that Amazon.com and eBay stop the counterfeiters for selling infringing items in their online stores. While both firms have provided some limited assistance in helping stop Defendant from using Hydreon's trademark in connection with the sale of Jebsens brand items, Defendant has ignored repeated requests to cease its illegal conduct.

## COUNT 1
## PATENT INFRINGEMENT

39. Hydreon incorporates by reference all of the foregoing allegations as if fully set forth here.

40. Defendant has infringed and continues to infringe the Patents under 35 U.S.C. §§ 271 (a) through (c) by: (a) making, using, selling, offering to sell, and/or importing the systems and/or methods covered by one or more claims of the Patents; (b) knowingly and actively inducing infringement of said claims of the Patents; and/or (c) indirectly and/or contributorily infringing said claims of the Patents.

41. Defendant is now and has been infringing, contributorily infringing, and/or inducing infringement of the Patents, literally and under the doctrine of equivalents.

42. Defendant does not have a license or permission to use the claimed subject matter of the Patents.

43. Defendant's aforesaid conduct in violation of 35 U.S.C. §§ 271(a)-(c) has injured Hydreon and will cause Hydreon further irreparable injury and damage in the

future unless and until Defendant is enjoined from infringing the Patents. Defendant is liable to Hydreon in an amount that adequately compensates it for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44. Defendant's violations of the Patent Act are willful.

## COUNT 2
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. §§ 1114, 1116)

45. Hydreon repeats and realleges the foregoing paragraphs as if fully set forth herein.

46. Without authorization or consent, Defendant shipped, offered for sale, sold, or facilitated the sale of Counterfeit Products bearing Hydreon's FakeTV Mark that are reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV Mark to the consuming public in direct competition with the sale of Hydreon's authentic products, in or affecting interstate commerce, in violation of the Lanham Act, specifically 15 U.S.C. § 1114 and § 1116.

47. Defendant's use of reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV Mark are likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendant's goods and cause the consuming public to believe that Defendant's goods have been manufactured or approved by Hydreon or that Defendant is legitimately connected with Hydreon or authorized by Hydreon to use the FakeTV Mark.

48. Defendant's conduct is causing immediate and irreparable injury to Hydreon, its goodwill and reputation, and will continue to damage Hydreon and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

49. In addition to injunctive relief, Hydreon is entitled to recover actual damages, Defendant's profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial. Any such damages and awards should be trebled pursuant to 15 U.S.C. §1117(b).

50. Hydreon reserves the right to seek statutory damages pursuant to 15 U.S.C. § 1117(c).

51. Hydreon is further entitled to an Order directing that all items in the possession, custody, or control of Defendant bearing reproductions, counterfeits, copies, or colorable imitations of Hydreon's registered Mark be delivered up to Hydreon and destroyed pursuant to 15 U.S.C. § 1118.

## COUNT 3
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

52. Hydreon repeats and realleges the foregoing paragraphs as if fully set forth herein.

53. Defendant's unauthorized use of reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV® Mark are likely to cause confusion, to cause mistake, or to deceive the consuming public and the trade as to the origin, sponsorship, or approval of Defendant's products.

54.   As a result of Defendant's unauthorized uses of reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV Mark in connection with Counterfeit Products, the consuming public and trade is likely to believe that Defendant's goods have been manufactured or approved by Hydreon, and such use falsely represents Defendant as being legitimately affiliated, connected, or associated with or authorized by Hydreon and places Hydreon's valuable and hard-earned reputation and goodwill in the hands of the Defendant in violation of 15 U.S.C. § 1125(a).

55.   Defendant's conduct is causing immediate and irreparable injury to Hydreon, its goodwill and reputation, and will continue to damage Hydreon and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

56.   In addition to injunctive relief, Hydreon is entitled to recover actual damages, Defendant's profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial. Any such damages and awards should be trebled pursuant to 15 U.S.C. § 1117(b). Hydreon reserves the right to seek statutory damages pursuant to 15 U.S.C § 1117(c).

57.   Hydreon is further entitled to an Order directing that all items in the possession, custody, or control of Defendant bearing reproductions, counterfeits, copies, or colorable imitations of Hydreon's registered Mark be delivered up to Hydreon and destroyed pursuant to 15 U.S.C. § 1118.

## COUNT 4
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

58. Hydreon repeats and realleges the foregoing paragraphs as if fully set forth herein.

59. Defendant is and has been infringing Hydreon's trademark and engaging in unfair competition by selling unauthorized Counterfeit Products bearing the FakeTV Mark.

60. This Count is for unfair competition under the common law, including the law of Minnesota and/or any of the other states where the parties do business.

61. Hydreon owns valid trademark rights in the FakeTV Mark as described above.

62. Defendant's use of the FakeTV Mark on the Counterfeit Products as described above is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association with Hydreon, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Hydreon. Defendant's conduct has damaged and will continue to damage Hydreon.

## **DEMAND FOR JURY TRIAL**

63. Plaintiff Hydreon, pursuant to Federal Rule of Civil Procedure 38, requests a trial by jury of any issues so triable by right.

## **PRAYER FOR RELIEF**

WHEREFORE, Hydreon requests the following relief:

1. As to Count 1:

    a) A judgment in favor of Hydreon and against Defendant on Count 1 of this Complaint;

    b) A judgment finding that Defendant has infringed, contributorily infringed, and/or induced infringement of the Patents in violation of 35 U.S.C. § 271;

    c) A judgment that the Patents are valid and enforceable;

    d) A judgment that Defendant has willfully infringed the Patents, and that Hydreon is entitled to relief provided by 35 U.S.C. § 284, including, but not limited to, treble damages;

    e) That preliminary and permanent injunctions be entered enjoining Defendant, and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, assigns, and all others acting in concert with Defendant from infringement, inducing infringement of, or contributing to the infringement, directly or indirectly, of the Patents;

    f) If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as a royalty-bearing license or such other relief as the Court deems appropriate;

    g) An award of damages adequate to compensate Hydreon for the infringement of the Patents that has occurred in an amount in excess of $75,000;

    h) An order that Defendant make an accounting of its accounts, receivables, revenues, profits, royalties, and damages owed to Hydreon, including any and all pre- and post-judgment periods of infringement;

    i) A determination that this is an exceptional case justifying the award of Hydreon's attorneys' fees pursuant to 35 U.S.C. § 285 and any other applicable statute or law, and an award of Hydreon's costs; and

2. As to Counts 2 through 4:

   a) That Defendant engaged in trademark infringement in violation of 15 U.S.C. § 1114 and the common law; Defendant used counterfeit Mark in violation of 15 U.S.C. § 1116; Defendant engaged in unfair competition, false designation of origin, and trademark infringement in violation of 15 U.S.C. § 1125(a);

   b) That Defendant has been unjustly enriched; and Defendant's acts of infringement, counterfeiting, dilution, unfair competition were willful.

   c) That preliminary and permanent injunctions be issued enjoining Defendant, and its agents, affiliates, and all persons in concert or participations with any of them, and any entity owned or controlled by Defendant, who receives actual notice of the order by personal service or otherwise, from:

      (1) using Hydreon's FakeTV Mark, including, any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names in connection with any goods or services or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination, or distribution of Counterfeit Products; processing, packaging, importing, or transporting any product that is not a genuine product of Hydreon bearing any of Hydreon's trademark or trade names or any mark that is a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names;

      (2) using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act which can, or is likely to, lead members of the consuming public or trade to believe that Defendant is associated with Hydreon or that any product imported, manufactured, distributed, or sold by Defendant is in any manner associated or connected with Hydreon, or is authorized, licensed, sponsored, or otherwise approved by Hydreon;

      (3) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities

16

        referred to in subparagraphs (a) through (b) above or taking any action that contributes to any of the activities referred to in subparagraphs above, or any other activity that consists of or contributes to the sale of counterfeit or infringing FakeTV® product bearing any of Hydreon's trademark or trade names, including but not limited to, the FakeTV Mark.

d)     That the Defendant, at its expense, recall any and all products that bear any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names from any distributors, retailers, vendors, or others to whom Defendant has distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof.

e)     That Defendant, at its own expense, transfer to Hydreon the domain name registrations for all domain names on which Defendant use Hydreon's FakeTV Mark.

f)     That Defendant deliver up to Hydreon's attorney for destruction, within five (5) days after service of judgment with notice of entry thereof, all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in its possession or under its control or (b) recalled by Defendant pursuant to any order of the Court or otherwise, incorporating any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names, and all plates, molds, matrices, and other means of making the same, and that Plaintiff be permitted to destroy all such goods without compensation to Defendant.

g)     That Defendant preserve all records (including electronically stored information) and other documents concerning all transactions relating to their acquisition, import, purchase, or sale of any goods bearing or including any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names, and that all such materials be made available to Hydreon for review, inspection, and copying on Hydreon's request.

h)     That Defendant provide Hydreon with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the source of all products that bear or include any simulation, reproduction, copy, colorable imitation, or

    confusingly similar variation of any of Hydreon's trademark or trade names, including all manufacturers, distributors, or suppliers.

i) That Defendant provide Hydreon with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the customers who purchased all products that bear or include any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names, including all manufacturers, distributors, or suppliers.

j) That Defendant shall file with the Court and serve upon Hydreon's counsel within thirty (30) days after service of judgment with notice of entry thereof upon them a report in writing under oath, setting forth in detail the manner and form in which it has complied with the all of the above.

k) That Defendant account for and pay over to Hydreon three times the profits realized by Defendant from its infringement of Hydreon's trademark and trade names and from its unfair competition with Hydreon.

l) That Hydreon be awarded its actual damages in an amount in excess of \$75,000, trebled pursuant to 15 U.S.C. § 1117(a) & (b), or, if Hydreon elects, statutory damages as the Court considers just, up to \$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c), arising out of Defendant's acts of willful trademark infringement and counterfeiting.

m) That Hydreon be awarded interest, including pre-judgment interest, on the foregoing sums in accordance with 28 U.S.C. § 1961.

n) That Hydreon be awarded its costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. 1117(a) and other applicable laws.

3. That Hydreon be awarded such other and further relief as the Court may deem just and proper.

Dated:  April 10, 2015	PERRY & PERRY, PLLP

By /s/ Shawn M. Perry
Shawn M. Perry, MN #0185000
Parkdale Plaza, Suite 336
1660 Highway 100 South
Minneapolis, MN 55416-1560
Telephone:  952-546-3845
Email: shawn.perry@pppllp.com

*Attorneys for Plaintiff*