## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Hydreon Corporation, a Minnesota corporation, | Case No. 15-cv-01917 (SRN/JSM) |
| Plaintiff, | **FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |
| v. | |
| JC Brothers, Inc., a California corporation, | |
| Defendant. | |

The above-entitled matter came on before the Court upon Plaintiff Hydreon Corporation's ("Hydreon") motion for entry of default judgment and permanent injunction against Defendant JC Brothers, Inc. ("Defendant") and request for an award of attorneys' fees and costs under Rule 55 of the Federal Rules of Civil Procedure (ECF No. 15). The Court, having carefully reviewed Hydreon's motion and all of the files, pleadings and proceedings herein, makes the following findings of fact, conclusions of law and order for judgment:

## FINDINGS OF FACT

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]**

**A.     BACKGROUND.**

1.      This is a patent infringement, trademark counterfeiting and infringement, unfair competition and false designation of origin action arising under the laws of the United States, including the Patent Act, 35 U.S.C. §§271 and 281-285 and the Lanham Act, 15 U.S.C §§ 1114, 1116 and 1125.

2.      Hydreon is a Minnesota corporation that designs, manufactures and markets various products, including patented and trademarked products sold under the brand and registered trademark FakeTV®.

3.      When this action was commenced, Defendant JC Brothers, Inc. ("JCB") was a California corporation with its registered offices located at 7220 Rosemead Boulevard, Suite 202-7, San Gabriel, CA  91775-1383.  JCB purports to be the owner of retail electronics sold under the brand name "Jebsens."  According to the California Secretary of State's website, as of October 6, 2016, JCB's status is "FTB Suspended" and its address had changed to 20895 Currier Rd, Unit B, Walnut California 91789.  (ECF No. 18, Perry Decl., ¶3 and ECF No. 18-1, Perry Decl. Ex. 1.)   The agent for service of process is identified as Haiming Zhang.   (*Id.*)  Jebsens' website indicates the company's

---

[1] Unless otherwise indicated, the non-damages factual allegations are based on the Complaint, which are to be accepted as true for purposes of a default judgment motion. *Am. Red Cross v. Cmty. Blood Ctr.*, 257 F.3d 859, 864 (8th Cir. 2001) ("facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding.")

"head office" is in China and still shows the original address as its United States offices. (*Id.*)

**B.**    **HYDREON'S PATENTS.**

4.    Hydreon is the assignee and registered owner of the following U.S. Patents:

      a.   No. 7,365,649 titled "Security Device and Methods for Security Device Operation" issued on April 29, 2008 (the "'649 Patent");

      b.   7,755,470 titled "Security Television Simulator" issued on July 13, 2010 (the "'470 Patent"); and

      c.   7,719,435 titled "Security Television Simulator with Realistic Emulation of Television Output" issued on May 18, 2010 (the "'435 Patent").

5.    The '649, '470 and '435 Patents are collectively referred to as "the Patents" herein.

**C.**    **HYDREON'S TRADEMARK.**

6.    Hydreon is also the owner of U.S. Registered Trademark No. 3519470 for the word "FakeTV."   FakeTV® has been registered since October 21, 2008.

7.    Hydreon designs, manufactures, markets, advertises, distributes, and sells in interstate commerce various types of products, including, FakeTV® products. FakeTV® products are security/burglar deterrent devices that are designed to make it appear that people are home watching television when the home is not occupied.  The products are small energy efficient devices that project and emit light patterns which

3

simulate real television broadcasts. An example of a Hydreon FakeTV® is depicted below:



8.     FakeTV® products have and continue to enjoy significant commercial success.  Hydreon primarily sells the products on Amazon.com. Beginning at least as early as 2008, Hydreon and its predecessors-in-interest adopted and began using the FakeTV trademark. Since that time, Hydreon and its predecessors-in-interest have continuously used the FakeTV trademark. FakeTV has been used in interstate commerce in the United States for the purpose of identifying Hydreon's products and for distinguishing goods from the goods of others.

9.     The registration of the FakeTV Mark on the Principal Register with the United States Patent and Trademark Office constitutes prima facie evidence of its validity and is conclusive evidence of Hydreon's exclusive rights to use the FakeTV Mark in commerce in connection with the goods named therein, and commercially related goods. 15 U.S.C. § 1057. The registration of the FakeTV Mark also constitutes constructive

notice of Hydreon's ownership and exclusive rights in the FakeTV Mark, 15 U.S.C. § 1072.

10.     Hydreon's products bearing the FakeTV Mark are sold throughout the United States.   In accordance with 15 U.S.C. § 1111, the FakeTV Mark is, and has been, displayed on Hydreon's products or on the packaging, marketing, or advertising materials, for such products, and is and was accompanied by the notation "®" to provide notice that the FakeTV Mark is federally registered and protected.

11.     Hydreon has advertised and promoted its products sold under the FakeTV Mark throughout the United States by means of various media, including, but not limited to, the Internet, and other traditional sales channels.

12.     As a consequence of Hydreon's continuous use of the FakeTV Mark throughout the United States, and due to the significant investment of time, money, and efforts, widespread sales, and the high quality of Hydreon's products sold in connection with the FakeTV Mark, the FakeTV Mark has acquired value and are well-known to the consuming public and trade as identifying and distinguishing the source of Hydreon's products.

13.     Hydreon also takes significant steps to protect its valuable intellectual property rights.

14.     Hydreon monitors internet marketplace sites such as Amazon.com and eBay.com for suspected sellers of counterfeit FakeTV merchandise.

15.     Hydreon has purchased sample Jebsens and other brands of FakeTV products from Amazon.com and analyzed to determine their authenticity and found that the devices infringe its patents and trademark as discussed below.

16.     Hydreon investigates suspected manufacturers, distributors, and retailers of unauthorized counterfeit FakeTV products and then takes steps to halt such unauthorized sales, as appropriate.

### D.     DEFENDANT'S CONDUCT.

17.     Defendant traffics in counterfeit FakeTVs which infringe one or more claims of all of the Patents by making, using, selling, offering to sell, and/or importing the systems and/or methods covered by one or more claims of the Patents.

18.     Defendant has repeatedly utilized Hydreon's FakeTV Mark or confusingly similar iterations of the Mark in connection with the advertising and sale of its counterfeit products despite notification from Amazon.com and eBay and Hydreon that Defendant's FakeTV products infringe Hydreon's Patents and trademark.

19.     Defendant, without authorization or license from Hydreon, knowingly and willfully used or reproduced Hydreon's FakeTV Mark in connection with its distributing, importing, shipping, advertising, offering for sale, selling, and facilitating the sale of Counterfeit Products in commerce.

20.     In addition to infringing the Patents and the FakeTV® Mark, Defendant has gone so far as to sell a near exact replica of Hydreon's product as depicted in the table below:

| Hydreon FTV-10 Device | JCB's Jebsens Device |
|---|---|
|  front angle view | front angle view |
| back angle view | back angle view |

21.    Defendant made substantial sales of Counterfeit Products in the United

States through Amazon and eBay's online stores and offers for sale, sells, distributes, and

facilitates the sale of Counterfeit Products via eBay.com, Amazon.com, and other websites as well.

22.     Hydreon became aware of Defendant selling products bearing the FakeTV® Mark in 2012.  Hydreon has periodically purchased sample products from Amazon.com. Hydreon confirmed that the samples are Counterfeit Products.

23.     Defendant purchased the Counterfeit Products from a source or sources that are not authorized or licensed by Hydreon to manufacture, offer for sale, or sell the products that infringe Hydreon's patents or bear the FakeTV Mark.

24.     The Counterfeit Products are not genuine FakeTV products. Hydreon did not manufacture, inspect, or package the Counterfeit Products, prior to the unauthorized sale and did not approve the Counterfeit Products for sale or distribution.

25.     Defendant is not authorized by Hydreon to manufacture, advertise, distribute, export, import, ship, sell, offer to sell, or facilitate the sale of any products bearing Hydreon's FakeTV Mark that are not authentic products.

26.     Defendant's infringement of the Patents and use of Hydreon's FakeTV Mark in connection with the advertising, marketing, distribution, import, export, shipping, offering for sale, sale, and facilitation of the sale of Counterfeit Products caused, and in the future are likely to cause, confusion among potential customers who will be deceived into believing that Defendant's Counterfeit Products are authentic products, thus harming the consuming public and irreparably harming Hydreon's valuable reputation and goodwill.

27.     The aforesaid conduct is causing Hydreon irreparable harm, for which there is no adequate remedy at law.

28.     Hydreon's counsel delivered a cease and desist notice to Defendant, which was ignored prior to the filing of this lawsuit.  Defendant has knowingly and willfully infringed the Patents and used or reproduced Hydreon's FakeTV Mark in connection with its distributing, importing, shipping, advertising, offering for sale, selling, and facilitating the sale of Counterfeit Products in commerce.

29.     Hydreon has also demanded that Amazon.com and eBay stop the counterfeiters from selling infringing items in their online stores.  While both firms have provided some limited assistance in helping stop Defendant from using Hydreon's trademark in connection with the sale of Jebsens brand items, Defendant has ignored repeated requests to cease its illegal conduct.

30.     JCB may also have been selling counterfeit products under other brand names.

31.     Hydreon has demanded the true identities of sellers of counterfeit items from Amazon.com and eBay to determine if they are affiliated with JCB, but both companies have ignored the requests.

## II.     CLAIMS FOR RELIEF IN COMPLAINT

Plaintiff's allegations for relief in the Complaint are as follows:

### A.     PATENT INFRINGEMENT.

32.     Count 1 of the Complaint alleges that Defendant has infringed and continues to infringe the Patents under 35 U.S.C. §§ 271 (a) through (c) by: (a) making,

using, selling, offering to sell, and/or importing the systems and/or methods covered by one or more claims of the Patents; (b) knowingly and actively inducing infringement of said claims of the Patents; and/or (c) indirectly and/or contributorily infringing said claims of the Patents.

33.     Defendant is now and has been infringing, contributorily infringing, and/or inducing infringement of the Patents, literally and under the doctrine of equivalents.

34.     Defendant does not have a license or permission to use the claimed subject matter of the Patents.

35.     Defendant's aforesaid conduct in violation of 35 U.S.C. §§ 271(a)-(c) has injured Hydreon and will cause Hydreon further irreparable injury and damage in the future unless and until Defendant is enjoined from infringing the Patents.  Defendant is liable to Hydreon in an amount that adequately compensates it for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284. Defendant's violations of the Patent Act are willful.

   **B.    STATUTORY          TRADEMARK          COUNTERFEITING, INFRINGEMENT,    UNFAIR    COMPETITION    AND    FALSE DESIGNATION.**

36.     Count 2 of the Complaint alleges Federal Trademark counterfeiting and infringement under 15 U.S.C. §§ 1114, 1116.  Specifically, without authorization or consent, Defendant shipped, offered for sale, sold, or facilitated the sale of Counterfeit Products bearing Hydreon's FakeTV Mark that are reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV Mark to the consuming public in direct

competition with the sale of Hydreon's authentic products, in or affecting interstate commerce, in violation of the Lanham Act, specifically 15 U.S.C. § 1114 and § 1116.

37.     Defendant's use of reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV Mark are likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendant's goods and cause the consuming public to believe that Defendant's goods have been manufactured or approved by Hydreon or that Defendant is legitimately connected with Hydreon or authorized by Hydreon to use the FakeTV Mark.

38.     Defendant's conduct is causing immediate and irreparable injury to Hydreon, its goodwill and reputation, and will continue to damage Hydreon and deceive the public unless temporarily, preliminarily, and permanently enjoined by the Court pursuant to 15 U.S.C. § 1116.

39.     In addition to injunctive relief, Hydreon is entitled to recover actual damages, Defendant's profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial. Any such damages and awards should be trebled pursuant to 15 U.S.C. §1117(b).

40.     Hydreon also seeks and is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).

41.     Hydreon is further entitled to an Order directing that all items in the possession, custody, or control of Defendant bearing reproductions, counterfeits, copies, or colorable imitations of Hydreon's registered Mark be delivered up to Hydreon and destroyed pursuant to 15 U.S.C. § 1118.

11

42.     Count 3 alleges federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a).  Defendant's unauthorized use of reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV® Mark are likely to cause confusion, to cause mistake, or to deceive the consuming public and the trade as to the origin, sponsorship, or approval of Defendant's products.

43.     As a result of Defendant's unauthorized uses of reproductions, counterfeits, copies, or colorable imitations of Hydreon's FakeTV Mark in connection with Counterfeit Products, the consuming public and trade is likely to believe that Defendant's goods have been manufactured or approved by Hydreon, and such use falsely represents Defendant as being legitimately affiliated, connected, or associated with or authorized by Hydreon and places Hydreon's valuable and hard-earned reputation and goodwill in the hands of the Defendant in violation of 15 U.S.C. § 1125(a).

44.     Defendant's conduct is causing immediate and irreparable injury to Hydreon, its goodwill and reputation, and will continue to damage Hydreon and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

45.     In addition to injunctive relief, Hydreon is entitled to recover actual damages, Defendant's profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial. Any such damages and awards should be trebled pursuant to 15 U.S.C. § 1117(b). Hydreon also seeks statutory damages pursuant to 15 U.S.C § 1117(c).

46.    Hydreon is further entitled to an Order directing that all items in the possession, custody, or control of Defendant bearing reproductions, counterfeits, copies, or colorable imitations of Hydreon's registered Mark be delivered up to Hydreon and destroyed pursuant to 15 U.S.C. § 1118.

### C.    COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION.

47.    Count 4 of the Complaint alleges common law trademark infringement and unfair competition.  Defendant is and has been infringing Hydreon's trademark and engaging in unfair competition by selling unauthorized products bearing the FakeTV® Mark. This Count is for unfair competition under the common law, including the law of Minnesota and/or any of the other states where the parties do business.

48.    Hydreon owns valid trademark rights in the FakeTV Mark as described above.  Defendant's use of the FakeTV Mark on the Counterfeit Products as described above is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association with Hydreon, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Hydreon. Defendant's conduct has damaged and will continue to damage Hydreon.

### D.    THE DEFAULT.

49.    Pursuant to the Court's May 29, 2015 Order authorizing substitute service on the California Secretary of State (ECF No. 9), Plaintiff effectuated service of the Summons and Complaint on June 5, 2015 via substitute service on the California Secretary of State. (ECF No. 12.)

50.    On September 14, 2015, Plaintiff filed an Affidavit of Identification and Application for Default.  (ECF No. 14.)

51.    On September 15, 2015, the Clerk of Court entered the default in this matter.  (ECF No. 15.)

52.    On October 7, 2016, Plaintiff served Defendant by U.S. Mail at both of its last known addresses with the instant motion for default judgment and all supporting papers.   (ECF No. 20, Certificate of Service.)  Defendant has failed to respond or appear in this action.

### E.    DAMAGES.

53.    Subsequent to the entry of default, Plaintiff issued third-party subpoenas to Amazon.com, Inc. and eBay, Inc. in an attempt to determine the sales of Defendant's infringing products.   After objections from both and delays by Amazon.com, Inc., Plaintiff was finally able to obtain sales histories from Amazon in September 2016. While the sales history is incomplete, it demonstrates that from March 31, 2014 to April 14, 2015, Defendant sold 1,587 units for approximately $81,000 inclusive of shipping, discounts and taxes through Amazon's website.  Since Amazon would only search for records based on product identification numbers, it is probable Defendant or affiliates were selling infringing products under other names. Notably, Amazon's report indicates that Defendant's sales in the 24-month period in the report, totaled $1,482,000.  (ECF No. 18, Perry Decl. ¶4.)

54.    There are numerous infringing products being sold on Amazon and eBay's websites that infringe the patents and trademark of Plaintiff and appear to be identical to

the Jebsens' products.  Despite Plaintiff's letters to Amazon and eBay and filing notices of claimed infringement, the counterfeiting of Plaintiff's products continues and Amazon and eBay have failed to put a stop to the activities or even provide Plaintiff with the identities of the counterfeiters.   (ECF No. 19, Teder Decl., ¶8; ECF 19-1, Teder Decl. Ex. 1; ECF No. 18, Perry Decl., ¶¶5-6.)

### F.    COLLECTABILITY.

55.    Since Defendant is a suspended California shell corporation with its main operations in China that has not answered or participated in this case, collecting a judgment will be difficult at best.  (ECF No. 18, Perry Decl., ¶7.)

### CONCLUSIONS OF LAW

### I.    DEFAULT JUDGMENT STANDARDS.

56.    The Federal Rules of Civil Procedure permit a default judgment to be entered against a defendant when the defendant has failed to plead or otherwise defend within the required time. Fed. R. Civ. P. 55.

57.    Hydreon served the default judgment motion papers on Defendant by mailing them to both of its last known addresses as noted above. In cases where notice of a default judgment motion is required, delivering the papers by mail to the Defendant's last known address is sufficient.  *See Motown Record Co., LP v. Murray*, 2007 WL 1521475 at *1 (W.D. La. May 21, 2007) (holding that plaintiff provides sufficient notice of an application for default judgment for purposes of Fed.R.Civ.P. 55(b)(2) by mailing a copy of the pleading to a defendant's last known address).

58.     "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944). "The court may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to ... determine the amount of damages." Fed.R.Civ.P. 55(b)(2)(B). *See also Am. Red Cross*, 257 F.3d at 864 ("When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." (quoting *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (internal quotation marks omitted)). Once the amount of damages has been established, the court may enter judgment pursuant to the rule.

59.     District courts are permitted to determine damages without an evidentiary hearing if the damages are adequately supported by documentary evidence. *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008).

## II.     LIABILITY.

60.     So long as the complaint alleges sufficient facts to establish liability, those facts are to be taken as true in a default judgment motion.   There is no question that the complaint adequately alleges willful patent infringement and trade mark infringement/counterfeiting.

61.     Plaintiff has nonetheless provided the Court with additional abbreviated evidence to demonstrate that Defendant has indeed infringed the intellectual property to sell counterfeit products.

62.     First, as to patent infringement, the claim chart attached to the declaration of Plaintiff's President indisputably shows that the Defendants' product infringes most of the claims of the three patents.  (ECF No. 19-1, Teder Decl., Ex. 2.)

63.     Second, the spreadsheet produced by Amazon attached to the declaration of Plaintiff's counsel, establishes that Defendant was selling its products using the trademarked phrase "Fake TV" in its products names repeatedly over the 24-month period for which Amazon produced information.  (ECF No. 18, Perry Decl., ¶4.)

64.     Third, the order confirmation attached to Mr. Teder's declaration shows that Defendant was using the phrase "Fake TV" to sell its counterfeit product.  (ECF No. 19-1, Teder Decl., Ex. 3.)

65.     Fourth, there are numerous products sold by different vendors on Amazon's website that could be marketed by Defendant under other aliases as shown by the many products that appear in a search of the trademarked phrase "Fake TV" that are on Amazon's website as of the date of this motion.  (ECF No. 18, Perry Decl. ¶6; ECF No. 19, Teder Decl. ¶ 8 and ECF No. 19-1, Teder Decl. Ex. 1.)

66.     The fact that the product is essentially identical and uses the trademarked name, unquestionably establishes willful patent and trademark infringement/counterfeiting.

### III.   DAMAGES.

67.   Plaintiff requests that the Court award it damages for patent infringement and trademark infringement/counterfeiting. Since the damages under multiple theories would be duplicative, Plaintiff has set forth the actual damages that it is aware of based on the limited information received from Amazon and then analyzed the damages that would be available for patent infringement and trademark infringement/counterfeiting. Plaintiff did not and the Court will not analyze the other theories of recovery because the recoveries would be redundant.

### A.   PATENT INFRINGEMENT.

68.   The Patent Act permits an aggrieved patent holder to recover actual damages or a reasonable royalty. 35 U.S.C. § 284. Here, Plaintiff has focused only on the reasonable royalty. Because this is a default judgment motion and the collectability is questionable, it was not cost-effective for Plaintiff to engage an expert witness to establish a reasonable royalty for purposes of this motion. (ECF No. 18, Perry Decl., ¶8.)

69.   Scholars have observed that median reported royalty rates in the electronics and computers range from 3.2% to 6.8% of sales. Jonathan M. Barnett, FROM PATENT THICKETS TO PATENT NETWORKS: THE LEGAL INFRASTRUCTURE OF THE DIGITAL ECONOMY, 55 Jurimetrics J. 1 (2014). Plaintiff's Fake TV product contains a circuit board, light emitting diodes and like and the patent claims cover the entire device and plainly falls into the consumer electronics category. Plaintiff's principal, Rein Teder, a co-inventor of the product is of the opinion that a reasonable royalty for the Fake TV

product would range from 3% to 10% of sales based on his understanding of the market place. (ECF No. 19, Teder Decl., ¶12.)

70.     Plaintiff has asked the Court to find that a 5% royalty is reasonable and appropriate for purposes of this default judgment, (ECF No. 19, Teder Decl., ¶13) and the Court finds that such a rate is reasonable and appropriate for purposes of this default judgment.  With known sales of $81,000, a reasonable royalty equates to $4,050.

## B.     TRADEMARK INFRINGEMENT/COUNTERFEITING.

71.     Plaintiff reserved the right to seek statutory damages in the Complaint. (Compl., ¶ 50.)   Statutory damages under the Lanham Act are the most appropriate damages to be awarded in this case because of the limited information available as to actual damages and the conduct of Defendant.

72.     15 U.S.C. § 1117(c) provides that in cases "involving the use of a counterfeit mark," the plaintiff may elect statutory damages in the amount of "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." [2]

73.     The statute does not provide guidelines for determining an appropriate award other than the limitation that the award be what the "court considers just."

---

[2] There is no question the goods in question are counterfeit as alleged in the Complaint and demonstrated herein within the meaning of 15 U.S.C. § 1116.

However, courts have considered the following factors in fashioning an award: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *United Pet Group., Inc. v. Mogylevets*, 2014 WL 3767861, at *3 (E.D. Mo. July 31, 2014).

74.     United Pet Group and other courts have awarded statutory damages in default judgment motions on facts similar to the case at bar.  *See*, *e.g.*, *Malletier v. Artex Creative International Corp.*, 687 F.Supp.2d 347 (S.D.N.Y. 2010); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161 (S.D.N.Y. 1999).  In such cases, uncertainty in calculating actual damages is to be construed against the non-answering defendant who has failed to appear in the action.

75.     Here, the Defendant has copied Plaintiff's patented product and used Plaintiff's trademark to sell its counterfeit goods.  The breadth of its scheme is similarly unknown because of Amazon and eBay's unwillingness to disclose the names of the actual sellers of the infringing products.  Counterfeiting is a rampant problem as indicated by a recent article by Business Insider entitled *Amazon is Cracking Down on Counterfeit Goods*.   (ECF No. 18, Perry Decl. Ex. 2.)

76.     There is no question the Defendants' conduct is willful as alleged in the Complaint and that deterrence be should an important factor for the Court to consider in assessing damages. The Court finds it is appropriate to assesses statutory damages

requested by Plaintiff in the amount of $200,000, which is the maximum amount available for non-willful violations.  This award is reasonable given that the circumstances here would warrant the imposition of up to $2,000,000 under the Lanham Act due to the Defendant's willful violations of the Lanham Act.

## IV.    PERMANENT INJUNCTION.

77.    The standards for a permanent injunction under the Patent and Lanham Act are essentially the same.

78.    Under the Patent Act, Plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

79.    Under the Lanham Act, Plaintiff is required to show: (1) its actual success on the merits; (2) that it faces irreparable harm; (3) that the harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012–13 (8th Cir. 2011).  Here, all four elements are proven.

80.    First, success on the merits is conclusively established because the facts in the Complaint are sufficient to establish liability and they are deemed to be true in this motion for default judgment.

81. Second, irreparable harm is presumed under the Lanham Act once a likelihood of confusion has been established. *Cmty. of Christ Copyright Corp.*, 634 F.3d at 1012. Such confusion is established by the allegations in the complaint and common sense given the facts set forth above. Irreparable harm is also present because Plaintiff's ability to accurately assess the magnitude of the losses from infringing conduct has been stymied by Defendant's failure to appear and allegations in the Complaint which are sufficient to establish irreparable harm.

82. Third, the remaining two elements are plainly established. Plaintiff's intellectual property rights have been infringed with impunity. It was not until this action was commenced that Defendant stopped selling infringing goods under the Jebsens brand, but there is no way to know if the same counterfeiters are selling under other brand names or aliases. Since Plaintiff only seeks to enjoin the sale of infringing counterfeit products there is no conceivable harm to Defendant and a significant benefit to the public and Plaintiff by protecting Plaintiff's intellectual property rights.

83. *United Pet Group., Inc. v. Mogylevets*, 2014 WL 3767861, at *6-7 is instructive. The Court granted a permanent injunction in a default judgment motion under facts similar to this case.

84. The Court finds that Plaintiff has established entitlement to a permanent injunction in this case.

## V. ATTORNEYS' FEES.

85. The Patent Act and Lanham Act both permit the award of attorneys' fees in "exceptional cases." 35 U.S.C. § 285; 15 U.S.C. § 1117(a); *Halo Elecs., Inc. v. Pulse*

*Elecs., Inc.*, 831 F.3d. 1369, 1381 (Fed. Cir. 2016) (analyzing the Supreme Court's recent decision confirming that exceptional cases under the Patent Act should generally be reserved for "egregious cases typified by willful misconduct."); *3M Co. v. Mohan*, 482 Fed. Appx 574, 580 (Fed. Cir. 2011) (awarding fees as an exception case under the Lanham Act for willful trademark infringement action).

86.     Given the obvious copying and egregious infringement of Plaintiff's patents and trademarks, concealment and failure to respond to this action, Plaintiff's allegations in the Complaint of willful infringement are to be accepted as true, thereby justifying the award of attorneys' fees under the exceptional case doctrines of the Patent Act and Lanham Act.

## ORDER FOR JUDGMENT

Upon review of the record, including Plaintiff's proposed injunction and order,

IT IS HEREBY ORDERED that:

1.     Plaintiff's Motion for Default Judgment is GRANTED;

2.     Plaintiff is entitled to recover statutory damages under the Lanham Act in the sum of $200,000;

3.     Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, assigns, and all others acting in concert with Defendant from is immediately and permanently ENJOINED from

a.      infringing, inducing infringement of, or contributing to the infringement, directly or indirectly, of U.S. Patent Nos. 7,365,649, 7,755,470 and 7,719,435;

b.      using U.S. Registered Trademark No. 3519470 for the word "FakeTV," including, any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names in connection with any goods or services or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination, or distribution of Counterfeit Products; processing, packaging, importing, or transporting any product that is not a genuine product of Hydreon bearing any of Hydreon's trademark or trade names or any mark that is a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names;   using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act which can, or is likely to, lead members of the consuming public or trade to believe that Defendant is associated with Hydreon or that any product imported, manufactured, distributed, or sold by Defendant is in any manner

associated or connected with Hydreon, or is authorized, licensed, sponsored, or otherwise approved by Hydreon;

c.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (b) above or taking any action that contributes to any of the activities referred to in subparagraphs above, or any other activity that consists of or contributes to the sale of counterfeit or infringing FakeTV® product bearing any of Hydreon's trademark or trade names, including but not limited to, the FakeTV Mark.

d.      Defendant, at its expense, recall any and all products that bear any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names from any distributors, retailers, vendors, or others to whom Defendant has distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof.

e.      Defendant, at its own expense, transfer to Hydreon the domain name registrations for all domain names on which Defendant use Hydreon's FakeTV Mark.

f.      Defendant deliver up to Hydreon's attorney for destruction, within five (5) days after service of judgment with notice of entry thereof, all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in its possession or under its control or (b) recalled by Defendant pursuant to any order of the Court or otherwise, incorporating any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names, and all plates, molds, matrices, and other means of making the same, and that Plaintiff be permitted to destroy all such goods without compensation to Defendant.

g.      Defendant preserve all records (including electronically stored information) and other documents concerning all transactions relating to their acquisition, import, purchase, or sale of any goods bearing or including any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names, and that all such materials be made available to Hydreon for review, inspection, and copying on Hydreon's request.

h.      Defendant provide Hydreon with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax

numbers) for the source of all products that bear or include any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names, including all manufacturers, distributors, or suppliers.

i.    Defendant provide Hydreon with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the customers who purchased all products that bear or include any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Hydreon's trademark or trade names, including all manufacturers, distributors, or suppliers.

j.    Defendant shall file with the Court and serve upon Hydreon's counsel within thirty (30) days after service of judgment with notice of entry thereof upon them a report in writing under oath, setting forth in detail the manner and form in which it has complied with the all of the above.

4.    Plaintiff shall be entitled to reasonable attorneys' fees and costs in this matter.  Plaintiff's counsel is directed to file an application for attorneys' fees supported by and affidavit and time records within 10 days of this Order for the Court's consideration.

LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT:


DATED: November 18, 2016          s/Susan Richard Nelson
                                  SUSAN RICHARD NELSON
                                  UNITED STATES DISTRICT JUDGE